UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

Thomasina Caputo,

                    Plaintiff,          08-CV-4584 (CPS)(SMG)

Holland America Line, Inc.              MEMORANDUM
                                        OPINION
                    Defendant.          AND ORDER


----------------------------------X
SIFTON, Senior Judge.


        Plaintiff Thomasina Caputo commenced this action against

Holland America Line, Inc. ("defendant") on November 12, 2008,

alleging that plaintiff tripped over a door-saddle on defendant's

cruise ship and suffered injuries as a result of defendant's

negligence in failing to maintain, inspect, and repair its

premises. Now before the Court is a motion by defendant to

transfer venue to the Western District of Washington State

pursuant to Federal Rule of Civil Procedure 1406(a) and a forum

selection clause in defendant's standard "Cruise and Cruisetour"

contract. On June 24, 2009, I held an evidentiary hearing to

determine whether Ms. Caputo was fit to travel to Washington

State. Based on the findings of fact and conclusions of law

below, the motion is granted.


                          **BACKGROUND**

        The following facts are drawn from the complaint, the

parties' submissions in connection with this motion, and the

transcript of the hearing.

Plaintiff is 81 years old and a resident of New York. Hearing Transcript at 5 ("Tr.").[1] On November 12, 2007, plaintiff was a passenger on the cruise ship M/S Noordam, owned by defendant. Compl. at ¶¶ 6-7. At 9:30 p.m. on that day, plaintiff tripped and fell in a doorway and suffered a right hip fracture. Compl. at ¶ 7, Caputo Aff. at ¶ 2. Plaintiff had surgery to her hip, which required the insertion of pins into her bone to hold her hip together. Caputo Aff. at ¶ 2. She underwent extensive physical therapy and received injections for pain. *Id*.

Defendant's 2007 "Cruise and Cruisetour contract" included a one page "Important Notice to Passengers," printed in capital letters and separated from the text of the contract. Declaration of Carol Kidd Ex. 3. This notice provided, in relevant part, that "all disputes and matters whatsoever arising under, in connection with or incident to this contract, the cruise, the cruisetour, the Holland trip or the Hal Air package shall be litigated, if at all, in and before the United States District Court for the Western District of Washington at Seattle..." *Id*. Plaintiff opposed the motion to change venue on the ground that she was unable to travel to Washington State for trial. I determined that it was necessary to conduct a hearing in order to assess whether

---

[1] Plaintiff's husband and companion, who was witness to the accident, is 82 years old and lives with plaintiff in New York.

plaintiff is physically able to travel. *See New Moon Shipping Co.
v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) (a court may
not resolve a disputed fact against a party opposing a forum
selection clause without conducting an evidentiary hearing).

At the hearing, plaintiff testified that when taking any
action, she must do so slowly, and she suffers pain. Tr. 8, 10.
She is unable to walk alone, as she is afraid that her hip may
collapse. Tr. 9. She is able to walk around the block assisted by
her husband, and walks around her house regularly. *Id*. She
testified that it is "very annoying" for her to sit for a long
time, because her bones hurt and she suffers general pain. *Id*.
She suffers this pain whenever she sits. *Id*. Plaintiff testified
that she cannot sit on an airplane due to the pain, which
sometimes makes her nauseous. Tr. 10.

Dr. Peter Sultan, an orthopedic surgeon who operated on
plaintiff's hip following the injury and has continued treating
her since that time, gave testimony regarding his June, 2009
examination of plaintiff, stating that her condition had
deteriorated from the year before, which was not uncommon. Tr.
27. He noted that she was walking at a slow pace and experiencing
discomfort. Tr. 28. He stated that she was a candidate for hip
replacement surgery, but that it was an elective procedure. Tr.
29. Her condition will continue to deteriorate, and she will
never return to normal functioning. Tr. 30. When asked what

physical restrictions plaintiff has, Dr. Sultan stated that her
main limitation was pain, and that her ability to tolerate pain
would control the extent of her activities. Tr. 30.[2] Dr. Sultan
stated that he would not advise her to travel long distances, as
she would suffer on the trip. Tr. 31. However, he further
testified that she could travel by air, although it would be
difficult. Tr. 40. Dr. Sultan stated that plaintiff indicated to
him that she does not want to take pain medication, because she
does not want to become dependant on it. Tr. 41. Ms. Caputo
declined to take medication after the initial medication gave her
pains in her chest, and refused to have pain management
injections. Tr. 15.  Dr. Sultan believes that pain medication
might help her to tolerate a plane flight. Tr. 42.

Plaintiff testified that she and her husband traveled 60
miles by taxi to reach the courthouse on the day of the hearing,
which is a journey she would be required to repeat every day for
the trial. Tr. 10-11. In November of 2008, plaintiff and her
husband took a cruise (distinct from the one at issue in this
case). Tr. 19.


**DISCUSSION**

Defendant seeks enforcement of the forum selection clause.

_____

[2]Dr. Sultan stated that there was a sign of "advanced arthritic change"
in Ms. Caputo's X-rays consistent with the experience of pain while seated.
Tr. 39.

Plaintiff responds that it would be a severe hardship for her to travel back and forth to Washington State from New York due to her physical limitations.

**A. Applicable Law**

Federal Rule of Civil Procedure 1404(a) provides that "[f]or the convenience of parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[T]he presence of a forum-selection clause... will be a significant factor that figures centrally in the district court's [1404(a)] calculus." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). A passenger cruise ticket is a maritime contract to which federal maritime law applies. *See Valenti v. Norwegian Cruise Line*, 2005 U.S. Dist. LEXIS 6811, at *7 (S.D.N.Y. April 21, 2005) (citing *Vavoules v. Kloster Cruise Ltd.*, 822 F.Supp. 979, 982 (E.D.N.Y. 1993)). "[F]orum selection clauses in maritime contracts are presumably valid," and "the burden is on the plaintiff who files suit outside the contractually designated forum to overcome this presumption." *Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F.Supp. 2d 352, 357 (S.D.N.Y. 2004) (citing *New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997)).

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595-96; 111 S. Ct. 1522; 113 L. Ed. 2d 622 (1991), the Supreme Court

held that a forum selection clause in a form passage contract is
enforceable if: (1) it is "reasonably communicated" by the
carrier to the passenger, *see id.* at 590, and (2) it stands up to
judicial scrutiny as to reasonableness and fundamental fairness.
*See id.* at 593-95; *see also The Bremen v. Zapata Off-Shore*
*Company*, 407 U.S. 1, 15, 16, 92 S. Ct. 1907, 32 L. Ed. 2d 513
(1972) (a forum selection clause is *prima facie* valid and should
be enforced unless it is "unreasonable and unjust, or [unless]
the clause [is] invalid for such reasons as fraud or
overreaching.").

A clause is unreasonable: (1) if its incorporation into the
agreement was the result of fraud or overreaching; (2) if the
complaining party will be deprived of her day in court due to the
grave inconvenience or unfairness of the selected forum; (3) if
the fundamental unfairness of the chosen law may deprive the
plaintiff of a remedy; or (4) if the clause contravenes a strong
public policy of the forum state. *See Roby v. Corp. of Lloyd's*,
996 F.2d 1353, 1363 (2d Cir. 1993) (citing *The Bremen*, 407 U.S.
at 10 and *Shute*, 499 U.S. at 595-96; *see also S.K.I. Beer Corp.*
*v. Baltika Brewery*, 443 F. Supp. 2d 313, 316 (E.D.N.Y. 2006)
(same) (citations omitted)). Difficulties due to the distance of
the forum from the plaintiff's residence are insufficient to
establish that the forum is unreasonably inconvenient. *See Effron*
*v. Sun Line Cruises, Inc.*, 67 F.3d 7, 10 (2nd Cir. 1995) ("a

forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel."); *Carron v. Holland Am. Line-Westours Inc.*, 51 F. Supp. 2d 322, 326 (E.D.N.Y. 1999) ("While the Court sympathizes with the plight of the plaintiffs facing the prospect of traveling to Washington State from New York, the travel inconvenience to the plaintiffs is not sufficient to prevent transfer to the Western District of Washington.").

Absent unreasonableness, a forum selection clause can bind the parties even where the agreement in question is a form consumer contract that is not subject to negotiation, as long as the clause passes the requirement of fundamental fairness. *Shute*, 499 U.S. at 589-95. Factors that the Court must consider in deciding the fundamental fairness of a forum selection clause include: whether the plaintiffs had notice of the forum selection clause; whether the defendant chose its corporate location to avoid litigation; whether the forum selection clause designates a "remote alien forum;" and whether the defendant acted in bad faith in obtaining the plaintiffs' consent to the forum selection clause. *Id*. at 594-595; *see also Effron*, 67 F.3d at 9-10.

In addition to these general propositions regarding the enforceability of forum selection clauses, the Supreme Court has emphasized that "a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit.

Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora." *Shute*, 499 U.S. at 593.

## B. Application

There is no dispute that the selection clause was reasonably communicated to plaintiff, nor does plaintiff contend that the clause was fundamentally unfair. The disagreement lies in whether it is unreasonable for litigation to take place in Washington State due to the inconvenience to plaintiff of traveling there from New York.

Plaintiff and her husband, a key witness, are elderly. Plaintiff states in her affidavit accompanying the motion that she "cannot travel" and it would be a "severe hardship" for her to attend trial in Washington State, due to her age and medical restrictions. However, plaintiff's physician testified that although plaintiff would suffer discomfort if she were to take a long journey, it would not be medically unsound to do so. Plaintiff's pain could be controlled with pain medication, which she has thus far refused to take. Notably, plaintiff testified that she recently took a cruise with her husband. The testimony by plaintiff and Dr. Sultan at the hearing makes clear that, although traveling would be difficult for plaintiff, it would be feasible to travel in her current physical condition to

Washington State for trial.

The standard for finding a forum selection clause unreasonable as stated by the Court in *The Bremen* indicates that it is possible for a plaintiff who cannot travel due to physical limitations. However, plaintiff has not made the requisite showing here. Plaintiff has accordingly failed to satisfy the "heavy burden of proof required to set aside the clause on grounds of inconvenience." *Shute*, 499 U.S. at 595 (citation omitted).[3] If, at the time the case is ready for trial,

---

[3]In support of its argument that the forum selection clause must control in any case, defendant cites the Second Circuit's opinion in *Effron*, in which the Second Circuit stated that "the right to a day in court means not the actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard. A plaintiff may have his 'day in court' without ever setting foot in a courtroom." 67 F.3d at 11 (citations omitted). This statement of law is in tension with the rule given in *The Bremen*, which states that a forum selection clause is unreasonable if "trial in the contractual forum will be so gravely difficult and inconvenient that [plaintiff] will for all practical purposes be deprived of his day in court," 407 U.S. at 18. *Effron* indicates that a plaintiff could never show that a forum was so inconvenient as to be unreasonable, because a plaintiff need not have the capacity to appear in court personally. Although the *Effron* case is fourteen years old, the Second Circuit has not clarified its holding in subsequent cases with regard to this proposition. The four cases cited by the *Effron* court in support of its 'day in court' holding concern quite different facts than the ones at issue here. *See Olsen v. Muskegon Piston Ring Co.*, 117 F.2d 163, 165 (6th Cir. 1941) (plaintiff's attorney did not show up for trial due to a conflict and the court dismissed the case with prejudice); *Galpin v. Page*, 85 U.S. (18 Wall.) 350, 368-69, 21 L. Ed. 959 (1873) (court lacked jurisdiction to grant judgment against a defendant who was outside the jurisdiction and was not noticed to appear); *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 271 (2d Cir. 1977) (a dismissal of a discrimination claim by a state agency for failure to state a claim had *res judicata* effect on a federal action); *Gray v. Great Am. Recreation Ass'n*, 970 F.2d 1081, 1082 (2d Cir. 1992) (trial may proceed even if a co-plaintiff does not appear). The conflict between *Effron* and *The Bremen* is a troubling one, but need not be resolved in this case, because plaintiff has failed to show that it will be impossible for her to attend trial in Washington State.

I note also that the Court's opinion in *Shute* did not resolve this question. The Court of Appeals, which ruled in favor of the plaintiffs, cited as a ground for its opinion evidence that the plaintiffs were physically and financially incapable of appearing in the forum. The Supreme Court rejected this argument based on the lack of evidence regarding the plaintiffs' physical and financial impediments, given that the District Court made no such

plaintiff's physical condition has further deteriorated such that traveling by plane is medically prohibited, she may renew her motion before the transferee Court. In the interim, defendant has stipulated that it will conduct video tape depositions of plaintiff, her husband, and her treating physicians, to minimize the difficulty of conducting the litigation.

## C. Motion for Sanctions

Defense counsel in its reply papers has requested sanctions against plaintiff's counsel for relying on cases that preceded the Supreme Court's opinion in *Shute* (which defendant considers the controlling case) in its opposition to change venue, thereby subjecting defendant to needless expenses in continuing to argue in favor of the motion when it is clear that the case must be transferred. Defendant brings this motion pursuant to 28 U.S.C. § 1927, which states that an attorney may be held accountable for costs, expenses, and fees if he "multiplies the proceedings in any case unreasonably and vexatiously." The purpose of the statute is "to deter unnecessary delays in litigation." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986), citing H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8. "An award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," such as delay. *Id*. at

findings. 499 U.S. at 594.

1273. A finding of bad faith is a prerequisite to sanctions. *Id*.

Defendant has not made the requisite showing that sanctions are warranted. Plaintiff's failure to recognize *Shute* as the leading case in this area of law is insufficient evidence of bad faith. Furthermore, as the review of the caselaw has demonstrated, it is possible, even under *Shute*, that an 80 year old woman with a bad injury faces such difficulties in traveling across the country to Washington State that she meets the legal standard for avoiding a forum selection clause, and therefore her opposition was not wholly lacking in merit. Accordingly the motion for sanctions is denied.

## CONCLUSION

For the reasons stated above, defendant's motion to transfer venue is granted. Defendant's motion for attorneys fees and costs is denied. The Clerk is directed to transfer this case to the United States District Court for the Western District of Washington State, *see* 28 U.S.C. § 1404(a), and to transmit a copy of the within to the parties and the assigned Magistrate Judge.

SO ORDERED.

Dated:     Brooklyn, New York
           July 29, 2009

                        By: /s/ Charles P. Sifton (electronically signed)
                            United States District Judge